IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAIDRICK JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:06-CV-264-M (BH) |
| v. | § | |
| | § | |
| DALLAS COUNTY JUVENILE | § | |
| PROBATION DEPARTMENT, | § | ECF |
| and DOUGLAS VANCE, | § | |
| | § | |
| Defendants. | § | Pretrial Management |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Court's *Standing Order of Reference*, filed August 10, 2005, this case

was referred to this Court for pretrial management, including the determination of non-dispositive

motions and issuance of findings of fact and recommendations to the District Court on dispositive

motions.  Before the Court is *Defendants' Motion for Summary Judgment*, filed January 31, 2007.

Also before the Court are Plaintiff's response to this motion and Defendants' reply thereto. Having

reviewed the pertinent filings, the evidence, and the law applicable to the issues raised, the Court

recommends that *Defendants' Motion for Summary Judgment* be **GRANTED**.

## I.  BACKGROUND

### A.  <u>Facts</u>

This is an employment discrimination and retaliation case.  Saidrick Jackson ("Plaintiff")

is an African-American male who was employed with Defendant Dallas County Juvenile

Department ("the Department") from February 6, 1989 through February 3, 2005.  (*See* Defendants'

App. at 2; Plaintiff's App. at 1).  At the time of his termination, Plaintiff held the position of Juvenile

Detention Officer III.  (*Id.*).  The undisputed facts establish the following events related to Plaintiff's termination.

Plaintiff arrived at work at approximately 6:59 A.M. on February 3, 2005.  (*See* Plaintiff's App. at 1).  A Dallas County Security Officer Rodrick Mitchell ("Officer Mitchell") was stationed in the parking lot and observed Plaintiff puncture the automobile tire on a vehicle belonging to Mr. Jett, who was Plaintiff's former supervisor.  (*See* Defendants' App. at 2).  Officer Mitchell reported his observations to the Superintendent of the Juvenile Detention Center, Defendant Douglas Vance.  (*Id.*).  Around mid-morning, Plaintiff was called into a meeting with Mr. Vance and with the Director of Human Resources.  (*See* Defendants' App. at 3, Plaintiff's App. at 1).  During this meeting, Mr. Vance informed Plaintiff that an eyewitness reported seeing him puncture the tire of a vehicle owned by Mr. Jett.  (*Id.*).  Mr. Vance further stated that the videotape from a security camera confirmed the witness' statement.  (*Id.*).  Mr. Vance gave Plaintiff an opportunity to explain his actions in the parking lot that morning, at which time Plaintiff explained that as he was getting out of his car, some personal papers flew out, and that he had to go between parked cars in the lot to retrieve them.  (*See* Plaintiff's App. at 2; Defendants' App. at 3).  Mr. Vance informed Plaintiff that the Department had reason to believe Plaintiff had punctured the tire on Mr. Jett's vehicle notwithstanding Plaintiff's vehement denials.  Based on the seriousness of Plaintiff's actions, Mr. Vance advised that Plaintiff's employment was immediately terminated and directed Plaintiff to turn in his county identification card and collect his personal belongings.  (*Id.*).

As Plaintiff was escorted into the lobby area of the Department, Mr. Vance asked Plaintiff to wait because the Sheriff's Department had some questions regarding the incident in the parking lot.  (*See* Plaintiff's App. at 2).  When an officer from the Sheriff's Department arrived, Plaintiff was

immediately placed in handcuffs and informed that the officer had been instructed to transport Plaintiff to jail. (*Id.*). Plaintiff was arrested, charged with the offense of criminal mischief, and spent 36 hours in jail. (*Id*). The criminal mischief charge has been dropped. (*See* Plaintiff's App. at 2).[1]

### B.    **Procedural History**

Plaintiff appealed his termination as provided by the Department's administrative procedures. His first appeal went to the Deputy Director of Institutional Services, Marta F. Balleste, on February 11, 2005. (*See* Defendants' App. at 3, 11). After review of the evidence and testimony presented at the hearing, Ms. Balleste affirmed the disciplinary action imposed by the Department, *i.e.*, termination of Plaintiff's employment. (*See* Defendants' App. at 12). On April 27, 2005, Plaintiff filed a further appeal to Mr. Randy Wadley, Assistant Director of Juvenile Services. (*See* Defendants' App. at 4, 14). Mr. Wadley held a hearing to receive evidence and testimony regarding the issues raised by Plaintiff. (*See* Defendants' App. at 15). After review of the evidence and testimony received, Mr. Wadley rendered his decision upholding the termination of Plaintiff's employment. (*Id.*). Plaintiff further appealed this decision to the Director of Juvenile Services, Mr. Mike Griffiths, on June 22, 2005. (*See* Defendants' App. at 4, 16). Although Plaintiff did not request a hearing, Mr. Griffiths held an informal hearing on June 28, 2005, and allowed Plaintiff to fully express his concerns related to the termination of his employment. (*See* Defendants' App. at 4). After researching the issues Plaintiff raised, Mr. Griffiths determined that the Department's

---

[1] The Court relies on the affidavit submitted with Plaintiff's response in opposition to Defendants' motion for summary judgment stating that the charges were dismissed rather than on the argument in his response that the charges remain pending. (*See* Plaintiff's Resp. at 8, ¶18). It notes, however, that regardless of the present status of the charge, there is no question that Plaintiff was charged with criminal mischief based on a security officer's report stating Plaintiff punctured a tire on a vehicle that belonged to Plaintiff's former supervisor. (*See* Defendants' App. at 7-8; Plaintiff's App. at 4).

disciplinary action resulting in termination of Plaintiff's employment should be upheld.  (*See* Defendants' App. at 18).

    **C.**    **Federal Proceeding**

Plaintiff filed this suit on February 10, 2006 alleging that Defendants' unlawful discrimination adversely affected the terms and conditions of his employment in violation of 42 U.S.C. § 2000e, and 42 U.S.C. § 1981 as amended by the Civil Rights Act of 1991.  (*See* Amended Compl. at 2, 5-6).[2]  Plaintiff asserts that Defendants terminated his employment because of his race and in retaliation for his complaints regarding unlawful employment practices.  (*Id.* at 6).  In addition, Plaintiff complains that Defendant Douglas Vance made defamatory statements about him and the events surrounding his termination.  (*Id.* at 6-7).  Plaintiff avers the statements by Vance were not only false, but have been injurious to his professional reputation.  (*Id.* at 7).  As a result of Defendants' actions, Plaintiff seeks to recover for emotional and economic damages he has suffered.  (*Id.*).  Plaintiff also seeks exemplary damages and injunctive relief.  (*Id.* at 8).

Defendants, Dallas County, Dallas County Juvenile Department, and Douglas Vance, in his individual and official capacity (collectively "Defendants"), filed the instant *Motion for Summary Judgment* ("Mot.") on January 31, 2007.  The motion makes four assertions in support of summary judgment: (1) Plaintiff cannot establish a prima facie case of racial discrimination under either 42 U.S.C. § 1981 or 42 U.S.C. § 2000e ("Title VII"); (2) Plaintiff cannot establish a prima facie case of retaliation under either § 1981 or Title VII; (3) Plaintiff cannot overcome Defendants' legitimate, nondiscriminatory reason for terminating Plaintiff's employment; and (4) Plaintiff's state law defamation claim against Defendant Vance in his individual capacity fails as a matter of law.  (Mot.

---

[2] Plaintiff amended his complaint on July 27, 2006, which is the live pleading before the Court.

at 1-2).

## II.  STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "[T]he substantive law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id.*  The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.  FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.  To carry this burden, the "opponent must do more than simply show ... some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor.  *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  "[T]he party opposing summary judgment is

required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim." *Id.* (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### III.  SUMMARY JUDGMENT EVIDENCE

Defendants filed an initial appendix in support of their motion for summary judgment along with their motion and brief in support. Plaintiff also filed an appendix in support of his response to Defendants' motion for summary judgment. Defendants then filed a *Supplemental Appendix to Defendants' Motion for Summary Judgment* together with their *Response to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment* ("Defendants' Reply") on March 20, 2007. The supplemental appendix consists of a deposition not submitted with Defendants' initial appendix. (*See generally* Supp. App.). Defendants explain that they submit this supplemental appendix to clarify the record because Plaintiff only attached selected excerpts from Mr. Vance's deposition in his appendix. (*See* Defendants' Reply at 1). Defendants do not cite any authority that suggests submission of this evidence with their reply is proper; nor did they seek leave of court to file their supplemental appendix. *See Dethrow v. Parkland Health Hosp. Sys.*, 204 F.R.D. 102, 103-04 (N.D. Tex. 2001) (holding that a reply appendix cannot be filed without leave of court). Although Plaintiff did not file any objections to Defendants' supplemental appendix, the Court can nonetheless sua sponte consider whether the evidence is properly before it.

The movant is not ordinarily permitted to introduce new evidence in support of a reply because such action would deprive the non-movant of a meaningful opportunity to respond. *Springs Indus., Inc. v. American Motorists Ins.*, 137 F.R.D. 238, 239-40 (N.D. Tex. 1991); *see also Racetrac*

- 6 -

*Petroleum, Inc. v. J.J.'s Fast Stop, Inc.*, No. 3:01-CV-1397, 2003 WL 251318, at *19 (N.D. Tex. Feb. 3, 2003) (a party may not file an appendix in support of a reply brief without first obtaining leave of court; because the purpose of a reply brief is to rebut the non-movant's response, not to introduce new evidence, such leave will be granted only in limited circumstances). By filing the deposition transcript as a supplemental appendix to their *Reply*, and making new arguments based on testimony in the deposition, Defendants deprived Plaintiff of a meaningful opportunity to respond to the new evidence.

Furthermore, Defendants have failed to show good cause for why this evidence was not submitted on January 31, 2007, when they filed their motion for summary judgment and initial appendix. For the foregoing reasons, the Court does not consider the evidence in *Defendants' Supplemental Appendix* to resolve the issues in the pending motion for summary judgment.

## IV.  TITLE VII CLAIMS

By the instant motion, Defendants move for summary judgment on all of Plaintiff's claims and argue that Plaintiff has not shown a prima facie case of employment discrimination based on race. (*See* Defendants' Br. in Support of Mot. at 4-6). Additionally, Defendants argue that their decision to terminate Plaintiff's employment was based on legitimate, nondiscriminatory reasons. (*Id.*). Defendants further contend that Plaintiff cannot establish their reasons for termination are pretextual. (*Id.* at 8). With respect to Plaintiff's retaliation claim, Defendants argue Plaintiff cannot establish a prima facie case, and even if he could, Plaintiff cannot show Defendants' legitimate, nondiscriminatory reasons for terminating Plaintiff's employment are pretextual. (*Id.* at 5-7).

Plaintiff responds that the evidence raises genuine issues of material fact regarding whether he can establish a prima facie case of race discrimination and retaliation. Thus, Plaintiff asks the Court to deny Defendants' motion for summary judgment in its entirety.

A.     **Legal standards**

Claims for racial discrimination in the employment context are analyzed under Title VII's well established burden-shifting paradigm. "First, the plaintiff must establish by a preponderance of the evidence a *prima facie* case of discrimination." *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998). A plaintiff may establish a *prima facie* case of racial discrimination through either direct evidence, statistical proof, or the test established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998).

If the plaintiff makes a prima facie case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action." *Id.* "Once the defendant meets this burden of production, the plaintiff must demonstrate that the defendant's proffered explanation is not the actual reason for its decision, but is instead a pretext for discrimination." *Id.* "An employer's reason cannot be shown to be a 'pretext for discrimination' unless the plaintiff introduces *some* evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason." *Id.*

The *McDonnell Douglas* burden-shifting framework also applies to claims for retaliation under Title VII, although the plaintiff must establish "but for" causation instead of pretext. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 806 (5th Cir. 2007) (holding "but for" standard is the proper measure of proof for a Title VII retaliation claim); *Vadie v. Mississippi State University*, 218 F.3d 365, 374 (5th Cir. 2000); *see also Valentine v. Bowsher*, No. 3:96-CV-0982-D, 1998 WL 329364, at *1 (N.D. Tex. June 12, 1998) (applying the *McDonnell Douglas* framework in a Title VII retaliation case).

B.     <u>**Race Discrimination**</u>

As stated above, Plaintiff may establish a prima facie case of race discrimination through direct evidence, statistical proof, or the *McDonnell Douglas* framework.  Plaintiff does not allege the existence of direct or statistical proof of race discrimination.  (*See generally* Amended Compl.). The *McDonnell Douglas* framework, therefore, is the measure by which the Court is to determine whether there is a genuine issue of material fact regarding his discrimination claim.   Because Defendants will not have the burden at trial concerning the elements of Plaintiff's prima facie case, Defendants can meet their summary judgment obligation by pointing the Court to the absence of evidence to support Plaintiff's case.  *See Keeley v. Cisco Sys.*, No. 3:01-CV-1504-D, 2003 WL 21919771, at *3 (N.D. Tex. Aug. 8, 2003) (noting that although the defendant did not explicitly argue that plaintiff had failed to establish a prima facie case, the defendant had satisfied its summary judgment burden by pointing to the absence of evidence to support one prong of the prima facie case) (citing *Celotex Corp.*, 477 U.S. at 325).  Once Defendant does so, Plaintiff must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial.  *See Keeley*, 2003 WL 21919771 at *3 (citing *Celotex Corp.*, 477 U.S. at 325; *Little*, 37 F.3d at 1075)). "Summary judgment is mandatory when the nonmoving party fails to meet this burden."  *Keeley*, 2003 WL 21919771 at *3 (citing *Little*, 37 F.3d at 1076).

1.     *Prima facie Case*

Applying the *McDonnell Douglas* framework to Plaintiff's race discrimination claim, he must make a prima facie showing that he (1) is a member of a protected class; (2) was qualified for his position; (3) was subject to an adverse employment action; and (4) was replaced by someone

outside the protected class,[3] or, in the case of disparate treatment, show that he was treated less favorably than similarly situated employees of a different race. *Okoye v. Univ. of Tex. Housto0n Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001) (quoting *Shackleford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)) (other citations omitted). Defendants concede that Plaintiff can establish the first three prongs of a prima facie case: Plaintiff, an African-American male, is a member of a protected class, was qualified for his job as a juvenile detention officer, and was terminated from employment. *See* Defendants' Br. in Support of Mot. at 4.

As to the fourth prong, Defendants argue Plaintiff has not identified evidence in the record showing that similarly situated employees of a different race were treated more favorably. *See* Defendants' Br. in Support of Mot. at 4. As previously noted, Defendants can meet their summary judgment burden by establishing an absence of evidence to support an element of Plaintiff's case. *Keeley*, 2003 WL 21919771, at *3. Defendants further argue that the summary judgment evidence[4] shows that no other employee of the Department has ever engaged in the type of misconduct—or similar conduct—which led to the termination of Plaintiff's employment. *See* Defendants' Br. in Support of Mot. at 5. In particular, Defendants refer to the affidavit of Mike Griffiths, which states that no other employee has ever committed "a criminal act identical to or even similar to" Plaintiff's act of February 3, 2005. (*See id.*; Defendants' App. at 5).

---

[3] It is undisputed that Plaintiff was replaced by another African-American male. (*See* Defendants' Br. in Support of Mot. at 4; *see also* Defendants' App. at 5).

[4] Defendants do not include any citations to the appendix in their brief in support of the motion for summary judgment. Local Rule 56.5(c) plainly states that when a motion is accompanied by an appendix, the party "must include in its brief citations to each page of the appendix that supports each assertion that the party makes concerning the summary judgment evidence." Further, it is well-established that Rule 56 of the Federal Rules of Civil Procedure "does not impose upon the district a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *See Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).

To avoid summary judgment, Plaintiff must then identify evidence in the record showing that a similarly situated employee of a different race engaged in comparable conduct but was not terminated. *Okoye*, 245 F.3d at 514. To meet the "similarly situated" standard, the employee's circumstances, including the conduct for which the Plaintiff was discharged, must be "nearly identical." *See Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004). Conduct "is not nearly identical when the difference between the Plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001). This "nearly identical" standard is strictly construed. *Okoye*, 245 F.3d at 514-15. The Fifth Circuit has consistently found that employees with different responsibilities, different supervisors, different capabilities, different work rule violations, or different disciplinary records are not considered to be "nearly identical." *See id.*

Plaintiff contends that there were other employees outside the protected class who under nearly identical circumstances were treated more favorably than him. (*See* Plaintiff's Resp. at 13). Specifically, Plaintiff states that Frank Morman, a Detention Officer, was charged with a felony offense, but was allowed to continue working while the criminal charge was pending. (*Id.*). Further, according to Plaintiff, Brandy McCray, a Detention Officer, was accused of "leaving her post, leaving juvenile children unsupervised, . . . throwing keys at her supervisor" and leaving the premises. (*Id.*) Plaintiff asserts Ms. McCray was allowed to continue her employment, was allowed to move to another shift, and was even later promoted. (*Id.*). In support of these assertions, Plaintiff refers the Court to his summary judgment evidence found in pages 1 and 2 of his appendix. These pages contain Plaintiff's sworn declaration, which discusses the disparate treatment issue in one paragraph:

> 11. I was treated differently than employees outside of the protected class, in that other employees who were charged with infractions that are more serious were allowed to maintain their employment until after an investigation was completed. Specifically Frank Morman who was accused of assault upon his wife and Brandy McCray who was accused of an assault against a co worker.

*See* Plaintiff's App. at 2.   While Plaintiff presents more detailed arguments regarding disparate treatment in his brief, the only evidence Plaintiff has presented is these two conclusory statements in his declaration.   However, "[c]onclusory statements are not competent evidence to defeat summary judgment."   *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007).

Apart from the conclusory assertions in his declaration, Plaintiff has failed to bring forth any evidence that other employees, of a different race, in "nearly identical" circumstances, were treated more favorably than him.   In other words, Plaintiff's evidence fails to establish that Morman and McCray shared the same responsibilities, supervisor, capabilities, and violated the same work rule as Plaintiff. *Aguinaga v. Tex. Alcohol & Beverage Comm'n*, 98 Fed.Appx. 328, at *3 (5th Cir. 2004) (holding that plaintiff failed to establish a prima facie case of discrimination because his evidence did not reflect employees in "nearly identical" circumstances given their different supervisors, job descriptions and disciplinary rules).   Simply, Plaintiff has failed to produce evidence of the necessary specificity to raise a genuine issue of material fact that he received disparate treatment as compared to other employees of a different race who engaged in similar conduct.   Thus, Plaintiff has failed to show a genuine issue of material fact concerning the existence of a prima facie case of discrimination.   However, even if the Court assumes for purposes of this motion that he established a prima facie case, as discussed below, Plaintiff's claim would still fail on the issue of pretext.

## 2.      *Legitimate Nondiscriminatory Reason*

Defendants have asserted a legitimate nondiscriminatory reason for their decision to terminate Plaintiff's employment.  (*See* Defendants' Br. in Support of Mot. at 7).  Specifically, Defendants aver Plaintiff was fired because based on a security officer's personal observations, they believed Plaintiff punctured the tire of an automobile that belonged to Plaintiff's former supervisor, and such acts were a direct violation of the Department's policies.  (*See* Defendants' App. at 1-5). Defendants submit the affidavit of Mike Griffiths with their motion, which establishes that they proffered the same reasons to Plaintiff at the time of his termination.  (*Id.* at 3 & attached exhibits).

Plaintiff simply argues that the allegations that he punctured a tire are false[5] and therefore his termination was racially-based.  (*See* Plaintiff's Resp. at 16).  This conclusory allegation does not raise any genuine issue of fact.  Simply, Plaintiff has produced no evidence—other than his belief that the reason for his discharge was based on his race—to rebut Defendants' articulated reason for firing him.  *See Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997) (noting that a plaintiff cannot merely rely on his subjective belief that discrimination has occurred).

Based on Officer Mitchell's personal observations, Defendants had a valid reason to believe Plaintiff had engaged in criminal mischief and thereby violated Department policies.  Defendants have therefore met their burden of production to provide a legitimate, nondiscriminatory reason for terminating Plaintiff.  Because Defendants have met their burden, Plaintiff must raise a genuine

---

[5]  Plaintiff's challenge to the veracity of the allegations that he punctured a tire is not an attack on Defendants' proffered reason.  Plaintiff must prove the articulated reason is false—*i.e.*, not the actual reason for why he was fired—not that Officer Mitchell's report is false.  *See Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 371 (5th Cir. 1997).  Officer Mitchell did not have any part in the decision to fire Plaintiff, he simply reported the criminal activity he saw in the parking lot.  Plaintiff offers no evidence to show that Defendants did not actually rely on Officer Mitchell's statement.  Further, Plaintiff has failed to bring forth evidence showing that the actual reason for his discharge was discriminatory.  *See Walton*, 119 F.3d at 370.

issue of material fact that Defendants discriminated against him, either by showing that Defendants' proffered reasons are a pretext for discrimination or by providing direct evidence of discrimination. *See Okoye,* 245 F.3d at 413 (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 449 (5th Cir. 1996)); *Hall v. Gillman Inc.*, 81 F.3d 35, 37 (5th Cir. 1996).

### 3.     *Pretext or Intentional Discrimination*

"An employer's reason cannot be shown to be a 'pretext for discrimination' unless the plaintiff introduces some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason." *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998); *see also Blow v. City of San Antonio, Tex.*, 236 F.3d 293, 297 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) (holding that such evidence may be circumstantial)). Whether direct or circumstantial, "the evidence offered to counter the employer's proffered reasons must be substantial." *Nichols*, 138 F.3d at 566.

Plaintiff argues that Defendants' stated reasons for terminating him are a pretext for discrimination. (*See* Plaintiff's Resp. at 16-17). Plaintiff primarily contends that the allegations that he punctured a tire on Mr. Jett's vehicle were false, and therefore Defendants' stated reason for termination is a pretext. Plaintiff offers that the real reason was retaliation for Plaintiff's successful grievances complaining about violations of Department policies and procedures. (*Id.*).

Plaintiff points primarily to two pieces of evidence. First, he contends the videotape from the Department's security camera does not conclusively show that he punctured the tire. Assuming Plaintiff is correct, this evidence does not create a genuine issue of material fact. Defendants' evidence establishes reliance on the personal statement of Officer Mitchell, who claimed to have witnessed the incident and swore out a report that charges Plaintiff with the offense of criminal

mischief. (*See* Defendants' App. at 7). Plaintiff has presented no controverting evidence that shows Officer Mitchell did not make such a statement or report. Instead, Plaintiff's evidence confirms that he was charged and arraigned for the offense of criminal mischief based on Officer Mitchell's statement and report. (*See* Plaintiff's App. at 4). While Plaintiff argues that the evidence shows Mr. Jett had previously had a flat tire due to debris in the parking lot, (*see* Plaintiff's App. at 74), Plaintiff has brought forth no evidence showing the flat tire on February 3, 2005, was not caused by a puncture made in the sidewall by a sharp object. (*See* Defendants' App. at 18).

Second, Plaintiff contends certain evidence shows the decision to fire him was made before meeting with him. (*See* Plaintiff's Resp. at 17). This assertion is unsubstantiated. Plaintiff refers the Court to pages 39-41 in his appendix, which include excerpts of the deposition testimony of Douglas Vance. (*See* Plaintiff's Resp. at 17). This excerpt does not contain testimony that a decision to fire Plaintiff was made before meeting with him; Mr. Vance testifies, "before I ever make final judgment, I want to hear, in this case [Plaintiff's] statement." (*See* Plaintiff's App. at 41).[6]

Plaintiff also argues that Defendants' proffered reason for terminating his employment is false because the criminal case was ultimately dropped. (*See* Plaintiff's App. at 2). Whether Plaintiff was ultimately prosecuted for the charge of criminal mischief is simply not relevant to the issue of whether the Department's decision to fire him was pretextual. *See English v. Colorado Dep't of Corrections*, 248 F.3d 1002, 1010 (10th Cir. 2001) (holding that the fact the criminal charge was subsequently dropped had no bearing on whether decision to terminate was pretextual). The

---

[6] The Court notes that additional testimony regarding Defendants' decision to terminate Plaintiff's employment is found on pages 34-38 of Plaintiff's appendix. In this testimony, Vance repeatedly asserted that no decision was made to fire Plaintiff before meeting with him. (*See* Plaintiff's App. at 34-38). Instead, Vance explained that he discussed the matter reported by Officer Mitchell with his supervisors and in these discussions it was concluded that if Plaintiff could not offer a "plausible" explanation for his conduct, then termination would be warranted. (*See* Plaintiff's App. at 38).

relevant inquiry is whether the information before Defendants at the time of termination was sufficient to warrant termination.

Defendants have established that they made the decision to terminate Plaintiff's employment after receiving a report from Officer Mitchell stating that he witnessed Plaintiff puncture the tire of an automobile belonging to Mr. Jett, Plaintiff's former supervisor, and listening to Plaintiff's explanations. (*See* Defendants' App. at 2-3). Defendants' evidence further establishes that the circumstances surrounding termination of Plaintiff's employment were independently reviewed through three administrative appeals, and the reviewing officers each found there was evidence indicating Plaintiff had punctured a tire on a vehicle belonging to Mr. Jett on the morning of February 3, 2005. (*See* Defendants' App. at 12, 15, 18). Plaintiff has introduced no evidence that shows Defendants did not actually base their decision on the evidence before them on February 3, 2005, *i.e.*, Plaintiff has not shown Defendants' stated reason is false. Apart from conjecture and speculation, Plaintiff has brought forth no competent summary judgment evidence showing that Defendants' real motive was discriminatory. Accordingly, Plaintiff has failed to show a genuine issue of material fact regarding pretext, and Defendants are entitled to summary judgment on the discrimination claim.

## C.   Retaliation Claim

Applying the *McDonnell Douglas* framework to Plaintiff's claim of retaliation, he must make a prima facie showing that: (1) he engaged in an activity protected under Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003));

*see also Strong v. Univ. Healthcare Sys. L.L.C.*, 482 F.3d 802, 806 (5th Cir. 2007) (holding that the causation prong is governed by the "but for" standard). With respect to the first element of a retaliation claim, "[a]n employee has engaged in activity protected by Title VII if []he has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).

Plaintiff asserts that he participated in a protected activity by filing grievances regarding unlawful employment practices and complaining of harassment. (*See* Plaintiff's Resp. at 15). Plaintiff's evidence consists of various internal memos written by him to various Department officials complaining of several things, including safety issues, his performance evaluations, misuse of county funds, and a failure to address a harassment complaint he filed against a Mr. Coffey. (*See* Plaintiff's App. at 11-21). However, contrary to Plaintiff's assertion, the filing of internal grievances do not constitute an activity protected under Title VII. *See Kaplan v. City of Arlington*, 184 F. Supp.2d 553, 564-565 (N.D. Tex. 2002) (holding that plaintiff's grievances did not constitute protected behavior under either the participation or opposition clauses of Title VII). Moreover, the memos submitted by Plaintiff which allude to a harassment complaint against Mr. Coffey do not contain any details related to any factor to which Title VII applies. (*See* Plaintiff's App. at 16, 19, 20). The record reveals no evidence of any instance where Plaintiff engaged in a protected activity. Thus, Plaintiff has failed to present a prima facie case of retaliation, and Defendants are entitled to summary judgment on this claim. Even if Plaintiff had established a prima facie claim of retaliation with respect to his termination, his claim would nevertheless fail because, as discussed in the previous section, he has failed to establish that Defendants' legitimate, nondiscriminatory reasons

for terminating him were pretextual.

For the foregoing reasons, Defendants' motion for summary judgment on Plaintiff's Title VII claims should be **GRANTED**.

## V.  SECTION 1981 CLAIMS

Plaintiff also seeks redress for his employment discrimination claim under 42 U.S.C. § 1981. (*See* Amended Compl. at 2, 5-6).  "As a general matter, section 1981 serves as a deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of race.  Section 1981 also provides a means of compensating a victim of racial discrimination." *Carroll v. General Accident Ins. Co. of Am.,* 891 F.2d 1174, 1176 (5th Cir. 1990).

To establish a right to relief under § 1981, Plaintiff must show: (1) that he belongs to a racial minority; (2) that Defendants intended to discriminate against him on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute.  *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003).  Claims of employment discrimination brought under § 1981 are governed by the same substantive legal standards and evidentiary framework applicable to claims brought under Title VII.  *See, e.g. Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002). Since the same evidentiary burdens apply, a claim that fails on the merits under Title VII likewise fails under § 1981.  Because Plaintiff fails to make a prima facie showing of race discrimination or retaliation under Title VII, he cannot make a prima facie show of the same claims under § 1981.  Thus, Defendants are entitled to summary judgment on all of Plaintiff's § 1981 claims.

## VI.  STATE LAW CLAIM

Plaintiff brings a defamation claim under state law against Defendant Douglas Vance.  (*See*

Amended Compl. at 2, 6-7).  Vance moves the Court to grant summary judgment on this claim.  (*See* Defendants' Br. in Support of Mot. at 9).  Having disposed of all Plaintiff's federal law claims against Defendants, the Court first considers whether to exercise supplemental jurisdiction over Plaintiff's state law claim.

When all federal claims are eliminated from a case prior to trial, the general rule is for the federal court to decline to exercise jurisdiction over pendent state law claims.  *Thomas v. Redford*, 3:00-CV-1643-D, 2002 WL 484651, *7 (N.D. Tex. Mar. 26, 2002) (quoting *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998)).  However, the rule is "neither mandatory nor absolute."  *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (quoting *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (1999)).  In determining whether to retain jurisdiction over the state law claims, the court considers the provisions of 28 U.S.C. § 1367(c) and issues of judicial economy, convenience, fairness, and comity.  *Jones v. Adam's Mark Hotel*, 840 F. Supp. 66, 69 (S.D. Tex. 1993).

Section 1367(c) states:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if–

> (1)    the claim raises a novel or complex issue of State law,

> (2)    the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

> (3)    the district court has dismissed all claims over which it has original jurisdiction, or

> (4)    in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Plaintiff's claim of defamation does not involve novel or complex issues of state law.  Because the

Court recommends granting summary judgment on Plaintiff's federal claims, any remaining state law claims now predominate.  Additionally, the Court finds no "exceptional circumstances" exist which provide compelling reasons to decline jurisdiction.  Finally, the factors of judicial economy, convenience, fairness, and comity do not present a reason to decline jurisdiction.  Plaintiff's defamation claim arises out of the same subject matter as his employment discrimination claims.  The Court is familiar with the merits of his claims and has spent a substantial amount of time reviewing the pleadings and researching the legal issues involved, and all parties have expended time and effort in presenting the merits of the case to the Court.  *See Amedisys Inc.*, 298 F.3d at 447 (exercising pendent jurisdiction where case had been pending almost three years, extensive discovery had been done, there was little left to do before trial, and the trial court had devoted many hours to the case and thus had "substantial familiarity with the merits of the case").  Accordingly, the Court finds that the principles of judicial economy, convenience, and fairness to the parties weigh in favor of retaining jurisdiction over Plaintiff's remaining pendent state law claim.

Vance argues that any communications made by him during the course of investigating what transpired on February 3, 2005 are protected by a qualified privilege.  (*See* Defendants' Br. in Support of Mot. at 9).  Alternatively, Vance argues there is no evidence to support all of the elements of a defamation claim.

Under Texas law, an employer is protected from liability for defamation by a qualified privilege that attaches to communications made in good faith regarding an issue of some concern or mutual interest to the speaker and the listener.  *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995).  This privilege applies as long as the communications are made only to persons having an interest or duty in the matter to which the communications relate.  *Id.*  To

overcome the privilege, a plaintiff must show the statement was made with actual malice. *Id.* In the context of a defamation claim, a statement is made with actual malice when it is made with knowledge of its falsity or reckless disregard as to its truth. *See Hagler v. Procter & Gamble Mfg. Co.*, 884 S.W.2d 771, 772 (Tex. 1994) (per curiam). "Reckless disregard" means that a statement is made with a "high degree of awareness of probable falsity." *Carr v. Brasher*, 776 S.W.2d 567, 571 (Tex. 1989). Once a defendant asserts the defense of privilege, the plaintiff must produce clear and convincing evidence of actual malice to survive summary judgment. *ContiCommodity Svcs., Inc. v. Ragan*, 63 F.3d 438, 442-43 (5th Cir.1995). Whether a communication is protected by a privilege is a question of law for the Court to decide. *Fitzjarrald v. Panhandle Pub. Co.*, 149 Tex. 87, 97, 228 S.W.2d 499, 505 (1950).

Plaintiff argues that Vance has not established that the privilege applies because he has failed to conclusively establish that the alleged defamatory statements were made with an absence of malice. (*See* Plaintiff's Resp. at 19). Plaintiff improperly allocates the burden of proof according to the state law summary judgment standard.[7] *See Westfall v. GTE North Inc.*, 956 F. Supp. 707, 715 & n.10 (N.D. Tex. 1996) (citing *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995)). Under the federal standard, the qualified privilege applies when a defendant establishes that the communications were made in good faith to a person or persons with an interest in the subject matter of the communication. *Id.* Once a defendant meets this initial burden, it is Plaintiff's burden to come forward with clear and convincing evidence that shows the statements were made with

---

[7] Federal law governing summary judgments differs from Texas law on the standard of proof. In Texas state court, the summary judgment standard requires the employer to conclusively establish that the alleged defamatory statement was made with an absence of malice. *See Jackson v. Cheatwood*, 445 S.W.2d 513, 514 (Tex. 1969). Because federal procedural law applies in this case, the Court applies the burdens as set forth in *ContiCommodity. Westfall*, 956 F. Supp. at 715 & n.10.

actual malice.  *See id.*

In his response to the motion for summary judgment, Plaintiff specifies that "Vance communicated to Mr. Jett, Balleste, Wadley, and Griffiths that Plaintiff had engaged in criminal activity before he met with Plaintiff."  (*See* Plaintiff's Resp. at 20).  To establish that these statements were made, Plaintiff refers the Court to evidence on pages 28 and 78 of his appendix. (*See* Plaintiff's Resp. at 20).  The Court notes that page 28 is the cover page to Vance's deposition and page 78 contains a letter written to Plaintiff.  Thus, this evidence does not show that Vance communicated to anyone that Plaintiff had engaged in criminal activity.

Notwithstanding the lack of evidence in the record that Vance made such statements to "Mr. Jett, Balleste, Wadley, and Griffiths," such statements would be protected by a qualified privilege. The record conclusively establishes that Mr. Jett was the owner of the vehicle with the punctured tire, and Balleste, Wadley, and Griffiths are all directors with higher authority than Vance.  (*See* Plaintiff's App. at 32; Defendants' App. at 10, 12-13, 15, 18).  Accordingly, these persons clearly had an interest or duty in the subject matter involving Officer Mitchell's report that he witnessed Plaintiff puncture the tire of the vehicle belonging to Mr. Jett.  Because the evidence establishes Vance's communications to Mr. Jett, Balleste, Wadley, and Griffiths are protected by qualified privilege, Plaintiff must bring forth clear and convincing evidence of actual malice to defeat the privilege.

To show malice, Plaintiff points to evidence regarding Vance's statements on whether he could actually see that Plaintiff punctured a tire on the videotape.  (*See* Plaintiff's Resp. at 20). Because the videotape does not clearly show Plaintiff in the commission of a crime, he contends, Vance acted in reckless disregard of the truth.  Further, Plaintiff refers to evidence that he argues shows Vance made the defamatory statement before Plaintiff gave his explanation of what transpired

- 22 -

in the parking lot.  (*See id.* at 20-21).  Plaintiff also points to evidence where Officer Mitchell admits

he saw Plaintiff pick up a paper, which Plaintiff contends lends support to his version of the facts.

(*Id.* at 21).  Plaintiff further argues Vance erroneously relied on Officer Mitchell's statement because

the facts show Officer Mitchell was parked three rows back and five car spaces over, with a vehicle

in his way.  Plaintiff suggests Officer Mitchell could not have seen the 7" object used to puncture

the tire.  (*Id.*).  Plaintiff further points out that Defendants did not find the object used to puncture

the tire.  Plaintiff also argues that Vance acted with malice when he brought Plaintiff into the lobby

to be arrested by the Sheriff's department in front of his peers.  (*Id.*).  Last, Plaintiff asserts that

Vance ignored facts that show vandalism and debris in the parking lot had been a prior ongoing

concern, and that employees had complained of theft and flattened tires.  (*Id.* at 22).  The fact that

Vance found Officer Mitchell's personal report  that he witnessed Plaintiff puncture the tire more

credible than Plaintiff's explanations does not evince malice.  To find actual malice, there must be

"sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts

as to the truth" of his communications.  *ContiCommodity*, 63 F.3d at 442-43 (quoting *Hagler*, 884

S.W.2d at 771-72)).

The evidence shows that Officer Mitchell filled out an official security officer's report stating

that Plaintiff committed an act of criminal mischief.  (*See* Defendants' App. at 7-8).  The record also

shows Defendants relied on the personal observations of Officer Mitchell to support their decision

to terminate Plaintiff's employment.  (*See* Defendants' App. at 6-10).  Plaintiff has introduced no

convincing evidence that Officer Mitchell's sworn official report is false or that Vance knew the

report was false but acted in reckless disregard of its truth.  Even if Vance made statements to Mr.

Jett, Balleste, Wadley, and Griffiths that Plaintiff engaged in criminal activity, such communications

were made on his good faith belief of the truth of the matter asserted in Officer Mitchell's report and

to persons in the Department who had an interest in the subject matter.   Thus, Vance's

communications are privileged.  Plaintiff has failed to present clear and convincing evidence from

which a jury could find that Vance acted out of malice in communicating to Mr. Jett, Balleste,

Wadley, and Griffiths that Officer Mitchell reported witnessing Plaintiff commit a criminal act of

mischief.  Accordingly, the Court should grant summary judgment on Plaintiff's defamation claim.

## VII.  CONCLUSION

For the foregoing reasons, the Court recommends that *Defendants' Motion for Summary*

*Judgment* should be **GRANTED** and plaintiff's claims dismissed with prejudice.

**SO RECOMMENDED** on this 29th day of June, 2007.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE